J-S37013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ADRIAN P. CAMPBELL | |
| Appellant | No. 878 EDA 2014 |

Appeal from the PCRA Order February 18, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001226-2011;
CP-45-CR-0001744-2011

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED JULY 24, 2015**

Appellant, Adrian P. Campbell, appeals from the order entered in the Monroe County Court of Common Pleas, which denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the relevant facts and procedural history of this case as follows.

> On April 6, 2010, [Appellant] was stopped while traveling on State Route 209.  A subsequent search of his vehicle yielded marijuana and fourteen empty baggies.  On April 8, 2010, a search warrant was executed on [Appellant's] residence, revealing additional marijuana, a scale, and a large sum of currency.
>
> As a result of the traffic stop, a Criminal Complaint was

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

filed against [Appellant] on March 16, 2011, charging [Appellant] with Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver [("PWID")] (35 P.S. § 780-113(a)(30)); Marijuana—Small Amount Personal Use (35 P.S. § 780-113(a)(31)); Use or Possession of Drug Paraphernalia (35 P.S. § 780-113(a)(32)); Operating with Unsafe Equipment (75 [Pa.C.S.A.] § 4107(b)(2)), and; Improper Sun [S]creening (75 [Pa.C.S.A.] § 4524(e)(1)).

In connection with the search of his residence, a second Criminal Complaint was filed against [Appellant] on June 3, 2011, charging him with [PWID] (35 P.S. § 780-113(a)(30)), and; Marijuana—Small Amount Personal Use (35 P.S. § 780-113(a)(31)).

On June 8, 2011, [Appellant] waived his preliminary hearing on the charges stemming from the traffic stop. Accordingly, on September 12, 2011, the Commonwealth filed a Criminal Information against [Appellant] charging him with the same counts listed in the Criminal Complaint. This Criminal Information is docketed at number 1226 Criminal 2011.

On June 29, 2011[, Appellant] waived his preliminary hearing on the charges emanating from the search of his residence. Accordingly, on October 3, 2011, the Commonwealth filed a Criminal Information against [Appellant] charging him with the same two counts listed in the Criminal Complaint. This Criminal Information is docketed at number 1744 Criminal 2011.

* * *

On June 7, 2012, following a trial by jury, [Appellant] was found guilty of [PWID, possession of marijuana, possession of a small amount of marijuana, and possession of drug paraphernalia] docketed at number 1226 Criminal 2011.

On August 21, 2012[, Appellant] entered a plea of guilty to Amended Count 1 of the Criminal Information docketed at number 1744 Criminal 2011, Marijuana—Small Amount Personal Use. This Plea was taken in exchange for the Commonwealth's agreement to [ask the court to enter *nolle prosequi* on] the other charges in that case. This

- 2 -

condition was fulfilled.

On the Motion of [Appellant's] counsel [("trial counsel")],[2] of the Monroe County Public Defender Office, and by Order of this [c]ourt dated August 28, 2012, sentencing on [Appellant's] case docketed at number 1226 Criminal 2011 was continued and scheduled to be held on the same day as sentencing on [Appellant's] case docketed at number 1744 Criminal 2011. [Appellant's] Motion was predicated on his medical needs: [Appellant] broke his arm in a motorcycle accident and wished to prolong sentencing on his case docketed at number 1226 Criminal 2011 so that he could attend his doctor's appointments.

On September 26, 2012, [Appellant] was sentenced on both cases. On [Appellant's] case docketed at number 1226 Criminal 2011, [Appellant] was sentenced to [an aggregate] period of incarceration not less than 23 months and not more than 72 months. On [Appellant's] case docketed at number 1744 Criminal 2011, [Appellant] was sentenced to a [consecutive] period of incarceration not less than 6 months and not more than 12 months, for a total aggregate sentence of not less than 29 months and not more than 84 months. All sentences imposed were within the statutory guidelines.

On October 3, 2012[, Appellant]…filed a Motion to Reconsider Sentence seeking State Intermediate Punishment on both cases. By Order of this [c]ourt dated October 9, 2012, said Motion was denied.

On November 14, 2012[, Appellant] filed a *pro se* Notice of Appeal on both cases.[3]

_____

[2] Trial counsel represented Appellant at his jury trial at number 1226 Criminal 2011 and during his guilty plea at number 1744 Criminal 2011.

[3] Appellant's untimely *pro se* notice of appeal was dated November 9, 2012, and entered on the docket on November 14, 2012. Generally, pursuant to the prisoner mailbox rule, the date a prisoner hands a *pro se* filing to prison authorities for mailing operates as the effective filing date. ***See Commonwealth v. Chambers***, 35 A.3d 34 (Pa.Super. 2011), *appeal*
*(Footnote Continued Next Page)*

On December 24, 2012, [trial counsel] filed a Motion for Withdrawal of Counsel predicated on his judgment that there were no errors that could properly be appealed and on information he received that [Appellant] had hired [replacement counsel], to represent him in his appeal.[4]

On January 14, 2013, [Appellant], through [replacement counsel], filed his Statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On [February 4,] 2013, the Superior Court quashed [Appellant's] appeal as untimely.

On September 25, 2013, [Appellant], through [replacement counsel], filed the present PCRA [petition] and a supporting memorandum of law seeking a new trial, or in the alternative, a reinstatement of his appellate rights based on two ineffective assistance of counsel claims.  …

*(Footnote Continued)* ─────────

*denied*, 616 Pa. 625, 46 A.3d 715 (2012) (explaining "prisoner mailbox rule" provides that *pro se* prisoner's document is deemed filed on date he delivers it to prison authorities for mailing).  Because Appellant was still represented by trial counsel when Appellant filed his untimely *pro se* notice of appeal, however, the court forwarded Appellant's *pro se* notice of appeal to trial counsel on November 16, 2012.  **See** Pa.R.Crim.P. 576(A)(4) (stating in any case in which defendant is represented by attorney, if defendant submits for filing written motion, notice, or document that has not been signed by defendant's attorney, clerk of courts shall accept it for filing, time stamp it with date of receipt and make docket entry reflecting date of receipt, and place document in criminal case file; copy of timestamped document shall be forwarded to defendant's attorney and attorney for Commonwealth within 10 days of receipt).  On December 4, 2012, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

[4] Trial counsel's motion also asked the court for an extension of time for Appellant to file a Rule 1925(b) statement.  On December 27, 2012, the court denied trial counsel's motion to withdraw and granted the motion for extension.  Trial counsel filed another motion to withdraw as counsel on January 11, 2013, which the court granted on January 18, 2013, following replacement counsel's entry of appearance on January 4, 2013.

(Opinion in Support of Denial of PCRA Relief, filed February 18, 2014, at 1-4; R.R. at 19-22) (internal citations omitted). On October 7, 2013, the Commonwealth filed a motion for teleconferencing of trial counsel during the PCRA hearing, explaining trial counsel had retired and relocated to Florida. The court granted the Commonwealth's motion on October 9, 2013. On December 20, 2013, Appellant filed a motion for reconsideration of the order granting teleconferencing, claiming it violated Appellant's rights under the Confrontation Clause. The court subsequently denied that motion.

The court held a PCRA hearing on December 23, 2013. On February 18, 2014, the court denied PCRA relief. Appellant timely filed a notice of appeal on March 17, 2014. On March 24, 2014, the court ordered Appellant to file a Rule 1925(b) statement, which Appellant timely filed on April 11, 2014.

Appellant raises three issues for our review:

> WHETHER APPELLANT…IS ENTITLED TO A NEW PCRA HEARING OR REINSTATEMENT OF HIS APPELLATE RIGHTS WHERE THE HEARING WAS CONDUCTED WITHOUT HOLDING A VIDEO CONFERENCE TO OBTAIN TRIAL COUNSEL'S TESTIMONY?

> WHETHER APPELLANT…IS ENTITLED TO THE REINSTATEMENT OF HIS APPELLATE RIGHTS WHERE TRIAL COUNSEL FAILED TO FILE A NOTICE OF APPEAL TO THE SUPERIOR COURT OF PENNSYLVANIA ON HIS BEHALF?

> WHETHER APPELLANT…IS ENTITLED TO A NEW PCRA HEARING OR REINSTATEMENT OF HIS APPELLATE RIGHTS WHERE [APPELLANT] WAS DENIED EFFECTIVE

ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL DID NOT FULLY INFORM AND ADVISE HIM OF THE POTENTIAL PENALTIES THE COURT COULD IMPOSE AS A RESULT OF HIM CONSOLIDATING HIS CASES FOR SENTENCING?

(Appellant's Brief at 2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297 (2011).

In his first issue, Appellant explains the PCRA court permitted trial counsel to testify at the PCRA hearing via teleconferencing, over Appellant's objection, because trial counsel resided outside of Pennsylvania. Appellant claims the Commonwealth arranged for trial counsel to testify *via* teleconferencing as opposed to videoconferencing for expediency. Appellant argues trial counsel's testimony by teleconferencing violated Appellant's rights under the Confrontation Clause. Appellant asserts he had a Sixth Amendment constitutional right to confront witnesses against him. Appellant maintains testimony by teleconferencing deprived Appellant of this

right because Appellant, defense counsel, and the court were unable to observe trial counsel's demeanor to assess credibility. Appellant concedes a PCRA hearing is not a critical stage in a criminal proceeding, but he suggests that when the sole issue is the ineffectiveness of counsel, then the PCRA hearing becomes an adversarial proceeding that should entitle Appellant to face-to-face confrontation with trial counsel. Appellant concludes the court abused its discretion by permitting trial counsel to testify by teleconferencing, and this Court should reinstate Appellant's appellate rights *nunc pro tunc* or afford him a new PCRA hearing with videoconferencing of trial counsel's testimony.[5] We disagree.

Our Supreme Court has discussed an accused's rights under the Confrontation Clause as follows:

> The Confrontation Clause of the Sixth Amendment, made applicable to the States *via* the Fourteenth Amendment…provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him…" In [**Crawford v. Washington**, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158

---

[5] Appellant also contends trial counsel's testimony by teleconferencing violated the Rules of Evidence, but Appellant does not specify which rule(s). Moreover, Appellant objected at the PCRA hearing to trial counsel's testimony by teleconferencing solely on Confrontation Clause grounds. Thus, Appellant waived his complaint based on the rules of evidence. **See Commonwealth v. McDermitt**, 66 A.3d 810 (Pa.Super. 2013) (explaining undeveloped claims are waived and unreviewable on appeal); **Commonwealth v. Lopez**, 57 A.3d 74 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013) (stating if appellant set forth specific grounds for objection before trial court, then all other unspecified grounds are waived and cannot be raised for first time on appeal).

> L.Ed.2d 177, ___ (2004)], the Court held that the Sixth Amendment guarantees a defendant's right to confront those "who 'bear testimony'" against him, and defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  The Confrontation Clause, the High Court explained, prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.  *Id.* at 53-56, 124 S.Ct. [at] 1354[, 158 L.Ed.2d at ___].

*Commonwealth v. Yohe*, 621 Pa. 527, 544, 79 A.3d 520, 530-31 (2013),

*cert. denied*, ___ U.S. ___, 134 S.Ct. 2662, 189 L.Ed.2d 209 (2014)

(internal footnotes omitted).

> Nevertheless:

> > The focus of claims of violation of this constitutional right is on the fairness and reliability of the criminal defendant's **trial**.  [Appellant] has cited to no authority holding that a Confrontation Clause challenge may be asserted in non-trial proceedings, including during PCRA evidentiary hearings.  …  To the contrary, on at least two occasions our Supreme Court has held that Confrontation Clause issues may not be asserted in collateral proceedings.  *See Commonwealth v. Collins*, 585 Pa. 45, 65 n.15, 888 A.2d 564, 576 n.15 (2005) ("*Crawford*, however, is unavailable to claimants on collateral review…"); *Commonwealth v. Gribble*, 580 Pa. 647, 663 n.7, 863 A.2d 455, 464 n.7 (2004) ("We need not concern ourselves with that question, as this is a collateral attack, and *Crawford* does not apply").

*Commonwealth v. Wantz*, 84 A.3d 324, 337 (Pa.Super. 2014) (some

internal citations omitted) (emphasis in original).

Instantly, the PCRA court addressed Appellant's first issue on appeal

as follows:

> At the [PCRA] hearing, the Commonwealth called as [its]

- 8 -

first witness [Appellant's] trial attorney…who has since retired and now permanently resides in Florida. [Trial counsel's] testimony was taken by telephone. [Replacement counsel] objected to the admission of [trial counsel's] testimony on the grounds that his demeanor could not be observed, robbing [Appellant] of his right to confrontation provided by both the Federal and Pennsylvania Constitutions. This [c]ourt noted counsel's objection, admitted the testimony of [trial counsel], and provided [replacement counsel] an opportunity to brief the issue.

[Appellant's brief] is devoid of legal authority which would support his position that telephone conferencing procedures do not comply with the confrontation clauses of the United States and Pennsylvania Constitutions. Similarly, we are unable to locate any authority which would either permit or proscribe such testimony at a PCRA hearing. We posit that this is because the Confrontation Clause does not extend to PCRA hearings.

A hearing on a PCRA [petition] is not a criminal proceeding, but a collateral one which is civil in nature. As such, it is not an adversarial proceeding and a critical stage in a criminal proceeding as is required to invoke the protections of the Confrontation Clause. Even if the Confrontation Clause does extend to collateral proceedings, the right to a face-to-face confrontation is in all cases preferred, not mandated. Accordingly, we conclude that the testimony of [trial counsel] was properly admitted….

(Opinion in Support of Denial of PCRA Relief at 5-6; R.R. at 23-24) (internal citations and quotation marks omitted). We accept the court's reasoning. *See Ford, supra*. At the PCRA hearing, Appellant objected to trial counsel's testimony by teleconferencing solely on Confrontation Clause grounds. Because the protections of the Confrontation Clause do not extend to collateral proceedings such as a PCRA hearing, Appellant's first issue on

appeal affords no relief. **See Wantz, supra**.

In his second issue, Appellant argues trial counsel failed to file a direct appeal on Appellant's behalf despite his requests to do so. Appellant asserts trial counsel sent a letter on or about October 16, 2012, informing Appellant the court had denied his post-sentence motion and trial counsel would not be filing an appeal on Appellant's behalf because there were no appealable issues. Appellant maintains he received trial counsel's letter roughly one week later and understood the letter to mean trial counsel would not file an appeal for Appellant. Appellant claims he spoke with a fellow inmate regarding the steps to take to request an appeal, so Appellant filed a *pro se* notice of appeal dated November 9, 2012, which the court entered on the docket on November 14, 2012. Appellant explains the Superior Court quashed his appeal as untimely. Appellant highlights his testimony at the PCRA hearing concerning a number of issues he wanted to raise on direct appeal. Appellant contends trial counsel's failure to file a requested notice of appeal deprived Appellant of the opportunity to pursue appellate issues. Appellant concludes trial counsel's inaction constitutes *per se* ineffectiveness, and this Court must reinstate Appellant's direct appeal rights *nunc pro tunc*. We disagree.

The law presumes counsel has rendered effective assistance. **Commonwealth v. Williams**, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is

required to demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit...." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (internal citations and quotation marks omitted). The failure to

satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***.

"[T]he PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal…." ***Commonwealth v. Lantzy***, 558 Pa. 214, 223, 736 A.2d 564, 570 (1999).

> [W]here there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii). Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.

***Id.*** at 226-27, 736 A.2d at 572 (internal footnote omitted). "While a defendant has the ability to relinquish his appellate rights, this can only be accomplished through a knowing, voluntary and intelligent waiver." ***Id.*** at 228, 736 A.2d at 572.

The following principles apply to a claim that counsel was ineffective for failing to pursue a direct appeal:

> "[B]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request." ***Commonwealth v. Knighten***, 742 A.2d 679, 682 (Pa.Super. 1999)[, *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000)].

* * *

The rule set out in **Knighten** has been modified by more recent decisions, particularly **Roe v. Flores-Ortega**, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) and its Pennsylvania expression, **Commonwealth v. Touw**, 781 A.2d 1250 (Pa.Super. 2001). These cases impose a duty on counsel to adequately consult with the defendant as to the advantages and disadvantages of an appeal **where there is reason to think that a defendant would want to appeal.**

* * *

Pursuant to **Roe** and **Touw**, **counsel has a constitutional duty to consult with a defendant about an appeal where counsel has reason to believe either "(1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing**." **Touw**[**, supra**] at 1254 (quoting **Roe**[**, supra**] at 480, 120 S.Ct. [at 1036]).

**Commonwealth v. Bath**, 907 A.2d 619, 622-23 (Pa.Super. 2006), *appeal denied*, 591 Pa. 695, 918 A.2d 741 (2007) (emphasis added).

In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant

sufficiently demonstrated to counsel an interest in an appeal.

**Roe, supra** at 480, 120 S.Ct. at 1036, 145 L.Ed.2d at \_\_\_ (internal citations omitted).

Further, even "[a] deficient failure on the part of counsel to consult with the defendant does not automatically entitle the defendant to reinstatement of his…appellate rights; the defendant must show prejudice." **Touw, supra** at 1254. Prejudice in this context means a defendant must show a reasonable probability that, but for counsel's deficient failure to consult, the defendant would have sought additional review. **Id.**

Instantly, the PCRA court addressed Appellant's claim as follows:

At the hearing on [Appellant's] PCRA [petition], [trial counsel] testified that on October 16, 2012, he sent a letter to [Appellant] indicating that his Motion to Reconsider Sentence was denied and communicating his professional judgment that [Appellant's] cases lacked appealable issues. This letter was received by [Appellant] approximately one week later. [Trial counsel] further testified that he did not remember ever discussing the possibility of an appeal with [Appellant]: [Trial counsel] neither recalls being contacted by [Appellant], nor do his notes reflect any communication from [Appellant] regarding his desire to appeal….

Based on the evidence presented at the hearing on [Appellant's] PCRA [petition], we find that [Appellant] failed to establish by a preponderance of the evidence that he requested an appeal. **Although [Appellant] adamantly maintained his desire to pursue a direct appeal and even testified vaguely to speaking with [trial counsel] about an appeal, we are unsatisfied that [Appellant] actually requested [trial counsel] to file an appeal**. In fact, we were presented with no evidence, other than the October 16, 2012 letter, that

- 14 -

> there was any communication between [Appellant] and [trial counsel] during the appeal period, let alone communication regarding an appeal. Accordingly, we find that [Appellant] did not request an appeal….

(Opinion in Support of Denial of PCRA Relief at 8-9; R.R. at 26-27) (internal citations omitted) (emphasis added). We accept and are bound by the court's credibility determination, concluding Appellant did not ask trial counsel to file an appeal on Appellant's behalf. *See Dennis, supra*. *See also Lantzy, supra*; *Bath, supra*; *Knighten, supra*.

Turning to whether trial counsel had a duty to consult with Appellant about filing an appeal, trial counsel testified at the PCRA hearing, *inter alia*, as follows: (1) trial counsel represented Appellant at his jury trial at number 1226 Criminal 2011 and at his guilty plea at number 1744 Criminal 2011; (2) trial counsel discussed with Appellant the risks of proceeding to trial at number 1226 Criminal 2011, including the potential sentences Appellant would face if the jury convicted Appellant of all offenses charged, and Appellant wanted to go to trial; (3) Appellant decided to enter a guilty plea at number 1744 Criminal 2011, and the terms of the plea were set forth in the written plea agreement; (4) trial counsel on Appellant's behalf requested consolidation of the cases for sentencing for Appellant's convenience; (5) trial counsel did not promise or inform Appellant that he would receive concurrent sentences as a result of consolidating his cases for sentencing; (6) trial counsel explained Appellant's post-sentence rights to Appellant and personally observed Appellant sign the explanation of post-sentence rights

form (setting forth Appellant's post-sentence and appellate rights);[6] (7) trial counsel spoke with Appellant on the phone following sentencing on October 2, 2012, to discuss potentially filing post-sentence motions; (8) the **only** issue trial counsel and Appellant discussed during this phone call involved asking the court to impose a sentence of state intermediate punishment or boot camp; (9) at no time during this call did Appellant say he was unaware of the maximum possible sentences involved in his cases; (10) Appellant did not ask trial counsel to file a direct appeal on his behalf during this phone call or at any time thereafter; (11) based on his phone conversation with Appellant, trial counsel filed a post-sentence motion asking the court to impose a sentence of state intermediate punishment or boot camp; (12) after the court denied Appellant's post-sentence motion, trial counsel sent Appellant a letter dated October 16, 2012, informing Appellant the court had denied his post-sentence motion and trial counsel would not be filing an appeal on Appellant's behalf because there were no appealable issues; (13) trial counsel's letter to Appellant confirmed what trial counsel believed had been the understanding between Appellant and trial counsel—that there were no issues Appellant wanted to pursue other than the request for state intermediate punishment or boot camp, which the court had denied; (14)

_____

[6] Appellant's signature on this form is somewhat illegible; trial counsel explained that Appellant's signature was scrawled due to his arm injury at the time.

trial counsel knew of no non-frivolous appealable issues; and (15) trial counsel ultimately learned Appellant filed a *pro se* notice of appeal.

Appellant also testified at the PCRA hearing, *inter alia*, as follows: (1) trial counsel failed to subpoena witnesses Appellant wanted to present at his jury trial; (2) trial counsel had minimal communication with Appellant about his case at number 1226 Criminal 2011; (3) Appellant complained to trial counsel about the prosecutor's remarks regarding the Commonwealth's expert's testimony, but trial counsel did not address Appellant's concerns;[7] (4) Appellant also complained to trial counsel about a potential juror who allegedly said he would believe a police officer over Appellant, but trial counsel did not have that juror stricken; (5) regarding Appellant's guilty plea at number 1744 Criminal 2011, Appellant conceded no one had promised him a specific sentence, but he said there was "talk" that Appellant would receive a lesser sentence than the one imposed; (6) Appellant denied signing the explanation of post-sentence rights form; (7) after sentencing, Appellant spoke with trial counsel; trial counsel informed Appellant that he would file a post-sentence motion on Appellant's behalf, but trial counsel felt

---

[7] Appellant phrased this complaint as follows: "…I didn't agree with what the DA was saying to the jury. When he had the specialist up here, you know, it was basically like the specialist was leading the jury on the topic of the marijuana being in a big Ziplock bag." (N.T. PCRA Hearing, 12/23/13, at 46; R.R. at 81). Appellant's precise claim is not particularly clear. Notably, trial counsel objected to the Commonwealth's expert's qualifications at trial, but the court overruled the objection.

there were no appealable issues; (8) following the conversation with trial counsel, Appellant believed trial counsel would only be filing a post-sentence motion on Appellant's behalf, but not a notice of appeal; (9) after the court denied Appellant's post-sentence motion, Appellant claims he asked trial counsel to file a notice of appeal, but trial counsel insisted there were no appealable issues;[8] and (10) Appellant asked fellow inmates for help in filing a *pro se* notice of appeal.

Here, Appellant's convictions and sentences arose from a jury trial and a guilty plea. Significantly, Appellant alleged no claims of error in his PCRA petition or supporting memorandum of law that he wanted to pursue on direct appeal relative to his jury trial or his guilty plea. Similarly, Appellant's brief does not specify any issues Appellant wanted to challenge on direct appeal in connection with his jury trial or guilty plea.

At the PCRA hearing, the only issues Appellant discussed relative to his jury trial involved **trial counsel's** potential ineffectiveness for his alleged failure to: (1) subpoena witnesses; (2) communicate with Appellant; (3) take action regarding Appellant's complaints of the prosecutor's comments about the Commonwealth's expert's testimony; and (4) remove a prospective juror. None of these issues, however, could have been raised on

_____

[8] Appellant did not provide a timeframe for this alleged discussion. Later in the hearing, Appellant admitted he had no communication with trial counsel after the court denied his post-sentence motion except for receiving the October 16, 2012 letter from trial counsel.

direct appeal. *See Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013) (holding, absent certain specified circumstances, claims of ineffective assistance of counsel must be deferred until collateral review). *See also Commonwealth v. Martin*, 607 Pa. 165, 5 A.3d 177 (2010) (restating general rule that counsel cannot raise his own ineffectiveness).

Additionally, Appellant advanced no testimony at the PCRA hearing concerning specific issues he wanted to raise on direct appeal as a result of his guilty plea. Appellant's written plea agreement expressly informed Appellant that his appeal rights were limited to challenging the court's jurisdiction, the legality of his sentence, and the validity of his guilty plea. Appellant's guilty plea was open as to sentencing and in exchange for Appellant's guilty plea to possession of marijuana, the Commonwealth agreed to ask the court to enter *nolle prosequi* as to the more serious PWID offense at number 1744 Criminal 2011.

The record also shows that after Appellant filed a *pro se* notice of appeal, Appellant's subsequent Rule 1925(b) statement raised only **one issue** for appellate review: whether the court erred in accepting his guilty plea because the plea was not knowing, intelligent, and voluntary. Nevertheless, Appellant failed to challenge the validity of his guilty plea in his post-sentence motion. Consequently, had this Court not quashed Appellant's appeal as untimely, his claim would have been waived for failure to preserve it. *See* Pa.R.Crim.P. 720 (governing post-sentence motion

procedures); ***Commonwealth v. D'Collanfield***, 805 A.2d 1244 (Pa.Super. 2002) (holding appellant waived challenge to validity of his guilty plea where he failed to initially challenge guilty plea in post-sentence motion). To the extent Appellant insists he would have pursued other issues on direct appeal but for counsel's alleged ineffectiveness, those issues would have likewise been waived for failure to include them in his Rule 1925(b) statement. ***See Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005) (holding any issues not raised in concise statement are waived on appeal).

Based on these circumstances, trial counsel had no further duty to consult with Appellant about filing an appeal because (1) no rational defendant in Appellant's position would have wanted to appeal; and (2) Appellant, in particular, failed to demonstrate that he wanted an appeal filed. ***See Roe, supra***; ***Bath, supra***; ***Touw, supra***. Thus, as presented, Appellant's claim regarding trial counsel's alleged ineffectiveness for failing to file a direct appeal must fail.

In his third issue, Appellant argues trial counsel did not fully inform and advise Appellant of the potential penalties the court could impose as a result of consolidating Appellant's cases for sentencing. Appellant asserts trial counsel admitted at the PCRA hearing he did not expressly discuss with Appellant the possibility of Appellant receiving the maximum sentence for his guilty plea conviction consecutive to the sentences imposed for his jury trial convictions. Appellant claims it was his understanding he would receive less

than the maximum sentence if he pled guilty.[9]  For these reasons, Appellant claims his guilty plea was not knowing, voluntary, and intelligent.  Appellant concludes trial counsel's ineffectiveness caused him to render an unknowing guilty plea, and this Court should grant Appellant a new trial at number 1744 Criminal 2011.  We disagree.

Initially, we observe:

> [G]enerally…issues not raised in a Rule 1925(b) statement will be deemed waived for review.  An appellant's concise statement must properly specify the error to be addressed on appeal.  In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal."  **Commonwealth v. Reeves**, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).  "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all."  **Id.**  The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised.  Thus, if a concise statement is too vague, the court may find waiver.

**Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (some internal citations omitted).

Additionally, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea."

---

[9] Based on Appellant's prior record score of four, Appellant faced a maximum sentence of one (1) year of imprisonment.  The court sentenced Appellant to six (6) to twelve (12) months' imprisonment for his guilty plea to possession of marijuana.

*Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa.Super. 2007) (quoting *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002)). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Moser, supra*. Pennsylvania law does not require the defendant to "be pleased with the outcome of his decision to enter a plea of guilty[; a]ll that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." *Id.* at 528-29. *See also Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582 (1999) (explaining court is free to consider totality of circumstances surrounding plea to determine defendant's actual knowledge of implications and rights associated with guilty plea; court may consider wide array of relevant evidence to assess validity of plea including but not limited to transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements).

Instantly, Appellant presented his third issue on appeal in his Rule 1925(b) statement as follows: "The [c]ourt erred by accepting [Appellant's] plea of guilty because he did not enter his plea, knowingly, intelligently and voluntarily." (Appellant's Rule 1925(b) Statement, filed April 11, 2014, at 1). Significantly, Appellant failed to present this issue in the context of trial counsel's alleged ineffectiveness or mention his current claim on appeal that he was unaware of the penalties he could face as a result of consolidating his

cases for sentencing. ***See id.*** Appellant's vague Rule 1925(b) statement

compels waiver of his issue on appeal. ***See Hansley, supra***.

Moreover, in its Rule 1925(a) opinion, the PCRA court explained:

> In initial response to [Appellant's Rule 1925(b) statement], we point out the obvious: a post-conviction court does not "accept" guilty pleas. Rather, this [c]ourt denied Appellant's petition for relief based on his allegations of ineffectiveness of counsel in connection with the entry of Appellant's guilty plea. What is more is the fact that Appellant never explicitly raised the argument that his attorney's ineffectiveness induced an unknowing or involuntary plea. This [c]ourt, however, anticipated the argument and opined on the matter nevertheless. …

(Trial Court Opinion, filed April 17, 2014, at 2). In its opinion denying PCRA

relief, the court reasoned:

> At the hearing on [Appellant's] PCRA [petition], the Probation Officer who performed [Appellant's] pre-sentence investigation testified that, in the Pre-Sentence Report, she recommended that the sentencing judge run [Appellant's] sentences consecutively. The Officer testified that she would not have changed her recommendation had [Appellant's] two cases been sentenced on two separate dates. Further, [Appellant] was colloquied on the sentencing judge's discretion to run multiple sentences consecutively when [Appellant] entered his plea of guilty:
>
> > THE COURT: …[I]f in a given case there is more than one charge that you're pleading guilty to; or if you are pleading guilty to crimes in more than one case, the sentences imposed on each charge could be run potentially consecutively, which means one after the other.
> >
> > So for example, if you had 3 months to 12 months on one charge, another 3 months to 12 months on another charge and then another case where you got 3 months to 12 months you could potentially face up to 9 months to 36 months in jail because of those

sentences.  And the way—the fancy term is called it would be aggregated, or run consecutively, and that each of the maximum penalties for each charge in each case could be run consecutively.

[N.T. Guilty Plea Hearing, 8/21/12, at 9-10].[10] Accordingly, we find that [Appellant] suffered no prejudice and his ineffective assistance of counsel claim predicated on [trial counsel's] failure to advise him of the possible penalties resulting from consolidating his cases for sentencing is denied.

\* \* \*

Excerpted above, we see that [Appellant] was properly advised by the [c]ourt of the possibility of consecutively run sentences at the time of the entry of his guilty plea. Accordingly, whether [trial counsel] similarly advised [Appellant] is inapposite in determining the propriety of his plea.

(Opinion in Support of Denial of PCRA Relief at 14-16; R.R. at 32-34).  The record supports the court's analysis.  **See Ford, supra**.

Additionally, trial counsel testified at the PCRA hearing that he had informed Appellant the court could impose the maximum sentence for Appellant's guilty plea consecutive to sentences imposed as a result of Appellant's jury trial convictions at number 1226 Criminal 2011.  Trial counsel denied telling Appellant he would receive concurrent sentences if he

---

[10] As well, on June 7, 2012, just prior to commencing Appellant's jury trial at number 1226 Criminal 2011, the court explained to Appellant that if the jury were to convict him of the charges in that case, and if Appellant incurred convictions in a separate outstanding case, then Appellant could face consecutive sentences for his crimes.  The court specifically explained to Appellant the meaning of "consecutive" sentences.

proceeded to a consolidated sentencing hearing. Notably, **Appellant** requested consolidation of his cases for sentencing to accommodate medical treatment for his physical injuries. Thus, even if properly preserved, Appellant's claim that his plea was unknowing, unintelligent, and involuntary would afford him no relief on the ground asserted. ***See Allen, supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2015